UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-507-DJH-CHL

**DORIS CAMPAGNA,**   **Plaintiff,**

v.

**GGNSC LOUISVILLE HILLCREEK, LLC,**   **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter was referred to the undersigned Magistrate Judge to determine whether discovery is needed before the pending Motion to Compel Arbitration (DN 5) can be resolved. (*See* DN 22 [referral order].) To that end, the undersigned will consider only the issue of whether discovery should be permitted, not whether any agreement to arbitration is valid or enforceable.

**I.**   **BACKGROUND[1]**

According to the complaint filed in Jefferson Circuit Court, Franklin Grimes ("Grimes") was a resident of defendant GGNSC Louisville Hillcreek, LLC d/b/a Golden Living Center – Hillcreek ("defendant" or "GLC-Hillcreek") when he died on June 11, 2015. (DN 1-1 at 3-4.) GLC-Hillcreek is a long-term nursing care facility. On or about July 13, 2016, plaintiff Doris Campagna, executrix of the Estate of Franklin Grimes ("plaintiff"), filed suit in Jefferson Circuit Court. (DN 1-1 at 2.)

On August 5, 2016, defendant removed this matter to this Court. On the same date, defendant filed a "Motion to Compel Arbitration and Stay the Lawsuit Pending Alternative

---

[1] The Background Section will only address the parties' arguments regarding whether discovery should be permitted.

1

Dispute Resolution Proceedings" ("Motion to Compel Arbitration") (DN 5). In the Motion to Compel Arbitration, defendant argues that two alternative dispute resolution ("ADR") agreements – dated February 19, 2013 and March 26, 2013, respectively – were signed by Grimes and demonstrate that plaintiff must be compelled to arbitration. (DN 5-1 at 2, 3 n.1, 9-12 [Ex. A, 2/19/13 ADR Agreement]; 13-16 [Ex. B, 3/26/2013 ADR Agreement].)

On September 7, 2016, plaintiff filed a response (DN 14) to the Motion to Compel Arbitration. In her response, plaintiff requests, among other things, that she be permitted to take discovery on the execution of the ADR agreements. (DN 14 at 11.) Plaintiff states that Grimes was admitted to GLC-Hillcreek on or about January 12[2], 2010. (*Id*. at 3; DN 14-2 at 2.) Plaintiff states that, prior to filing the lawsuit, she obtained from defendant what defendant purported to be all the records pertaining to the care and treatment of Grimes at GLC-Hillcreek. (DN 14 at 3.) According to plaintiff, there is no record of an ADR agreement being signed by Grimes for the January 12, 2010 admission. (*Id*.) Grimes was discharged from GLC-Hillcreek on or about November 8, 2010. (DN 14-2 at 2-3.) Grimes was admitted to GLC-Hillcreek again from approximately February 16, 2013 to March 8, 2013. (DN 14-3 at 2.) According to plaintiff, defendant claims that the February 19, 2013 ADR agreement was signed as part of this admission process. (DN 14 at 3; *see also* DN 5-1 at 1, 9-12.)

Grimes was admitted to GLC-Hillcreek again from approximately March 21, 2013 to March 23, 2013. (DN 14-4 at 2.) Grimes was then admitted to GLC-Hillcreek again on or about March 25, 2013. (DN 14-5 at 2.) According to plaintiff, defendant claims that the March 26, 2013 ADR agreement was signed by Grimes as part of this admission process. (DN 14 at 3-4;

---

[2] Although plaintiff states that Grimes was initially admitted to GLC-Hillcreek on January 11, the medical record at DN 14-2 shows a "start of care" date as January 12. (DN 14-2 at 2-3.)

*see also* DN 5-1 n.1, 13-16.) Grimes was subsequently discharged and readmitted to GLC-Hillcreek several more times.

Plaintiff asserts that certain pages of the ADR agreements – produced by defendant and relied upon by defendant in its Motion to Compel Arbitration – were interspersed with pages from other documents. (*See* DN 14-10 [out-of-sequence 3/26/13 ADR agreement]; DN 14-13 [out-of-sequence 2/19/13 ADR agreement].) Plaintiff argues that these circumstances, namely "the selective agreements on only two admissions and the manner in which those agreements are interspersed with the other admission documents in the records of [GLC-]Hillcreek, raise an inference that the agreements do not comport with legitimate contract formation and were obtained either through procedural unconscionability or fraud." (DN 14 at 11.) Consequently, plaintiff requests discovery on the execution of the two ADR agreements. (*Id.*)

Also on September 7, 2016, plaintiff filed a "Motion to Defer Ruling on Defendant's Motion to Compel Arbitration and Stay the Lawsuit Pending Alternative Dispute Resolution Proceedings" ("Motion to Defer Ruling") (DN 15). In the Motion to Defer Ruling, plaintiff again requests that she be permitted to take discovery on the execution and formation of the two ADR agreements executed by Grimes; plaintiff specifically incorporates her response to the Motion to Compel Arbitration.

On September 26, 2016, defendant filed a reply (DN 16) in further support of its Motion to Compel Arbitration. Along with the reply, defendant filed, for the first time, a signed "Resident and Facility Arbitration Agreement" (DN 16-1) dated January 11, 2010. Defendant argues that the January 11, 2010 arbitration agreement also encompasses plaintiff's claims in this lawsuit and should be enforced. (DN 16 at 3.)

Defendant also submitted with its reply an affidavit and supplemental affidavit (DN 16-2) from Alisha Duvall ("Duvall"), former Admissions Director for GLC-Hillcreek. In her affidavit, Duvall attests that she has no independent recollection of the specifics of Grimes's admission or residency at GLC-HillCreek location, nor does she remember the specifics of the presentation of the March 26, 2013 ADR agreement to Grimes. (DN 16-2 at 1.) However, because Duvall's signature was on the March 26, 2013 ADR agreement, she asserts that she presented it to Grimes. (*Id.*) Duvall describes her "standard process" for presenting ADR agreements to residents. (*Id*. at 1-2.) This standard procedure includes explaining the ADR agreement, including the fact that it is not a precondition to admission at GLC-Hillcreek and is revocable up to thirty days. (*Id.*) In her supplemental affidavit, Duvall states that she reviewed Exhibit 10 (DN 14-10), the out-of-sequence March 26, 2013 ADR agreement filed by plaintiff, and she would not have presented the admissions papers in this order. (*Id*. at 3.) Duvall also states that reviewed Exhibit 11 (DN 14-11), the consecutively-paginated March 26, 2013 ADR agreement, and that it is organized in the order that she would have presented it to Grimes. (*Id.*) Defendant avers that Duvall's testimony is uncontroverted, and that plaintiff has produced no evidence that the manner in which the ADR agreements were apparently *retained* by GLC-Hillcreek have anything to do with the manner in which they were *presented* to Grimes. (DN 16 at 5, 7.)

On October 3, 2016, defendant filed a response (DN 17) to the Motion to Defer Ruling; defendant incorporates its reply (DN 16) in further support of its Motion to Compel Arbitration.

On October 24, 2016, plaintiff filed a reply (DN 20) in further support of the Motion to Defer Ruling. Among other things, plaintiff takes issue with defendant's inclusion of the January 11, 2010 arbitration agreement and affidavits of Duvall in its reply.

On April 25, 2017, the undersigned conducted a telephonic conference in this matter. During the telephonic conference, plaintiff requested and was granted permission to file a sur-reply to defendant's reply (DN 16) in further support of its Motion to Compel.

On May 10, 2017, plaintiff filed a sur-reply (DN 26) to the Motion to Compel Arbitration.

## II. DISCUSSION

Plaintiff makes several arguments as to why discovery is necessary. Several of those arguments can be easily disposed of. Plaintiff intimates that the signatures on the ADR agreements were not that of Grimes and/or that those agreements are not authentic; however, this is pure speculation unsupported by any factual evidence in the record thus far. (*See* DN 14 at 2, 10-11.) Furthermore, plaintiff fails to develop any true argument on these two points. Therefore, the Court will not permit discovery on this basis at this time. *See, e.g.*, *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016) ("Without some sort of factual showing as to why the discovery requested [regarding the validity of the arbitration agreement at issue] is justified, the Court declines to grant such discovery.").

The thrust of plaintiff's argument appears to be that discovery is necessary because (1) as produced by defendant, the February 19, 2013 and March 26, 2013 ADR agreements were interspersed with other documents; and (2) in its reply to the Motion to Compel Arbitration, defendant produced, for the first time a third arbitration agreement, the January 11, 2010 arbitration agreement. With respect to (1), defendant does not appear to dispute that it produced the February 19, 2013 and March 26, 2013 ADR agreements in the manner alleged. Plaintiff

5

avers that the manner in which these ADR agreements were produced raises questions of procedural unconscionability and fraud. (DN at 14 at 10.)

While the Court will not at this juncture address the validity of the agreements at issue, it cannot ignore the ultimate question – whether there is a valid agreement between the parties to arbitrate – in determining whether discovery should be permitted. *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) ("Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable [sic]; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.") (quoting *Javitch v. First Union Sec. Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)) (internal quotation marks omitted). Because arbitration agreements are fundamentally contracts, one must look to the applicable state law of contract formation to determine whether an arbitration agreement is enforceable. *Seawright v. American Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).

Under Kentucky law, a "[t]he doctrine of unconscionability is a narrow exception to the fundamental rule of contract law that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Ggnsc Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200, at *4 (W.D. Ky. Feb. 9, 2017) (citing *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001)). A contract may be either procedurally or substantively unconscionable. Procedural unconscionability "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language . . . . [It] involves, for example, 'material, risk-shifting' contractual terms which

6

are not typically expected by the party who is being asked to 'assent' to them and often appear [ ] in the boilerplate of a printed form." *Conseco,* 47 S.W.3d at 343 n. 22 (quoting, in part, *Harris v. Green Tree Financial Corp.,* 183 F.3d 173, 181 (3rd Cir.1999)) (internal quotation marks and citations omitted).

While not commenting on the strength of plaintiff's arguments regarding procedural unconscionability, the Court finds that the interspersed pages of the February 19, 2013 and March 26, 2013 ADR agreements among other documents, along with defendant's apparent disclosure of the January 11, 2010 arbitration agreement in its reply in further support of its Motion to Compel Arbitration, raise enough questions to justify limited discovery in this matter. *Cf. Ggnsc Louisville Mt. Holly, LLC*, 2017 WL 537200, at *4 (W.D. Ky. Feb. 9, 2017) ("Here, the Court notes that the arbitration agreement at issue: (1) is a stand-alone agreement; (2) contains four printed pages in normal font; (3) contains a bold-face capital letter provision noting waiver of right to a jury trial on its first page; (4) contains no limitation on type or amount of damages claimed; (5) contains no limitation on causes of action; and (6) contains a signature page titled in bold-face capital letters stating that the agreement governs important legal rights and should be read carefully. Taking these factors into account, the arbitration agreement between Ms. White and Golden Living center was not unconscionable from a procedural standpoint."); *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 576–77 (Ky. 2012) ("Upon review of the general provisions of the arbitration clause, we cannot conclude that it is procedurally unconscionable. The clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the

principal bargain in an extreme or surprising way."); *Abell v. Bardstown Med. Inv'rs, Ltd.*, No. 3:11-CV-86-H, 2011 WL 2471210, at *2–3 (W.D. Ky. June 20, 2011) ("In the present case, the Agreement clearly broadcasts its content and what signing it would entail. The Agreement was also a distinct and separate contract from actual admission documents—it was not buried in fine print, nor was it an inconspicuous, nondescript paragraph within a larger document.").

Defendant argues that Duvall's affidavit testimony is "conclusive and uncontroverted" with respect to her standard process for presenting ADR agreements and that if she ever suspected someone was not able to understand an ADR agreement, she would advise them not to enter into the agreement at that point in time; defendant also states that Duvall testified that she would not have presented admission papers in the order they are arranged in Exhibit 10 (DN 14-10) and that they would have been organized as they were in Exhibit 11 (DN 14-11). (DN 17 at 3.) However, defendant ignores the fact that Duvall also testified that she has no independent recollection of the specific of Grimes's admission or residency at GLC-Hillcreek or the presentation of the March 26, 2013 ADR agreement to Grimes. (DN 16-2 at 1.) Moreover, Duvall's testimony only pertains to the March 26, 2013 ADR agreement, not the other agreements potentially at issue. Consequently, Duvall's testimony does not moot the issue of whether discovery is necessary.

Therefore, the Court will permit limited discovery regarding the circumstances regarding the execution, retention, and production of (1) the February 19, 2013 and March 26, 2013 ADR agreements; and (2) the January 11, 2010 arbitration agreement.

### III. CONCLUSION

Accordingly,

IT IS ORDERED the Motion to Defer Ruling on Defendant's Motion to Compel Arbitration and Stay the Lawsuit (DN 15) is GRANTED.

Plaintiff will be permitted to take limited discovery before consideration of the Motion to Compel Arbitration. Based on plaintiff's counsel's representations in the Telephonic Status Conference held on April 25, 2017, regarding the limited nature of the discovery being sought, this limited discovery shall be completed on or before September 15, 2017.

cc: Counsel of record