UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DORIS CAMPAGNA, *Executrix of the Estate of Franklin Grimes*,                                  Plaintiff,

v.                                                       Civil Action No. 3:16-cv-507-DJH-CHL

GGNSC LOUISVILLE HILLCREEK, LLC,                            Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Doris Campagna sued Defendant GGNSC Louisville Hillcreek, LLC, on behalf of her father Franklin Grimes, who was a resident of Golden LivingCenter – Hillcreek, a skilled nursing facility operated by GGNSC. (*See* D.N. 1-1) Campagna alleges that GGNSC violated Grimes's rights as a nursing-home resident under Kentucky law and negligently injured him, ultimately resulting in his wrongful death. (*Id.*)

GGNSC removed the action to this Court and seeks to compel arbitration of Campagna's claims. (D.N. 1; D.N. 5) For the reasons set forth below, the Court will grant in part GGNSC's motion to compel arbitration, excluding Campagna's wrongful-death claim.

### I.     Background

Franklin Grimes was first admitted to Hillcreek on January 11, 2010, and stayed until his discharge on November 8, 2010. (D.N. 14-2; D.N. 16-1) Beginning in February 2013, Grimes was readmitted and discharged on a number of occasions, staying at Hillcreek from February 19, 2013 to March 8, 2013 (D.N. 14-3), March 21, 2013 to March 23, 2013 (D.N. 14-4), and March 25, 2013 until his death on June 11, 2015 (D.N. 14-5; D.N. 14-14). During his final stay at Hillcreek, Grimes left the facility for periodic admissions to the local Veterans Affairs Hospital. (*See* D.N. 46-1; D.N. 46-2)

1

GGNSC contends that as part of the admissions process, Grimes entered into three separate arbitration agreements: January 11, 2010 (D.N. 16-1); February 19, 2013 (D.N. 5-1, PageID # 31–34); and March 26, 2013 (*id.*, PageID # 35–38). The 2013 Agreements each require the parties to arbitrate

> all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

(*Id.*, PageID # 32, 36) The 2010 Agreement contains similar language. (D.N. 16-1, PageID # 152) The Agreements also contain a remain-in-effect clause, which states that the Agreements' provisions would remain in effect for all subsequent stays at Hillcreek, even if Grimes was discharged from and readmitted to the facility. (D.N. 5-1, PageID # 33, 37; D.N. 16-1, PageID # 153) Additionally, GGNSC maintains that Grimes entered into two admissions contracts pertaining to his February 19, 2013 and March 25, 2013 admissions to Hillcreek. Each contract states:

> This [Admissions] Agreement supersedes any prior admission contracts regarding your admission to our LivingCenter. However, if you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement.

(D.N. 42-2, PageID # 430, 440)

In this action, Plaintiff Doris Campagna asserts various claims of negligence against GGNSC on Grimes's behalf. (*See* D.N. 1-1) According to the complaint, GGNSC failed to discharge its obligations to Grimes, and in so failing, caused Grimes to suffer injuries, which resulted in his wrongful death. (*See id.*) GGNSC moves to compel arbitration pursuant to the

2

alleged arbitration agreements between Grimes and GGNSC. (D.N. 1; D.N. 5) Campagna sought limited discovery on the issues raised in her response brief to GGNSC's motion to compel arbitration. (D.N. 15) Specifically, Campagna questioned the validity of the Agreements based on the order in which they may have been presented to Grimes. (*See* D.N. 14) In a memorandum opinion and order entered August 14, 2017, Magistrate Judge Colin H. Lindsay granted Campagna's request for limited discovery. (D.N. 27) Following completion of the limited discovery, the parties filed supplemental briefs on the issue. (D.N. 37; D.N. 38) On March 20, 2018, the Court ordered the parties to complete further supplemental briefing on three outstanding issues. (D.N. 39) After submission of the briefs, this matter is ripe for review. (*See* D.N. 40; D.N. 42; D.N. 43; D.N. 44)

## II. Wrongful Death

As an initial matter, arbitration of Campagna's wrongful-death claim may not be compelled. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192 (6th Cir. 2016); *see also Brandenburg Health Facilities, LP v. Mattingly*, No. 3:15-cv-833-DJH, 2016 WL 3448733, at *6 (W.D. Ky. June 20, 2016). And GGNSC concedes that Campagna's wrongful-death claim is not arbitrable. (D.N. 42-1, PageID # 412–13) Accordingly, the Court will not compel arbitration of the wrongful-death claim. Campagna may pursue that claim in this Court.

## III. Motion to Compel Arbitration

The Federal Arbitration Act states that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

3

9 U.S.C. § 4. The Act further provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When deciding whether to compel arbitration, this Court must (1) "determine whether the parties agreed to arbitrate"; (2) "determine the scope of that agreement"; (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

At issue is whether the parties agreed to arbitrate. "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)); *see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) ("The Federal Arbitration Act . . . requires courts to place arbitration agreements on equal footing with other contracts." (internal quotations omitted)). Under Kentucky law,

> [w]hile there is no question "that the party seeking to enforce an agreement has the burden of establishing its existence, . . . once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." A party "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ] to arbitrate."

*MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (alterations and omission in original) (internal citation omitted) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)).

The party seeking to avoid arbitration bears "a heavy burden" "to prove there is no agreement." *Id.* (quoting *Louisville Peterbilt*, 132 S.W.3d at 857). To survive a motion to compel arbitration, "the non-moving party must demonstrate that the validity of the agreement is 'in issue' by showing that there is a genuine issue of material fact as to the validity of the arbitration agreement." *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15–CV–00104–JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016). Campagna must come forward with sufficient evidence that, when viewed in the light most favorable to her, would permit "a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

GGNSC has met its initial burden in establishing the Agreements' existence by providing written and signed copies of the Agreements. (*See* D.N. 5-1, PageID # 31–34, 35–38; D.N. 16-1) *MHC Kenworth-Knoxville/Nashville*, 392 S.W.3d at 906. However, the Agreements themselves raise an important issue, irrespective of Campagna's rebuttal arguments: Whether the Court must decide which Agreement is the operative contract between the parties, and if so, which is the operative contract. Campagna indicates that her claims accrued in January/February 2015, when Grimes allegedly first sustained the injuries at issue. (D.N. 40, PageID # 353) Thus, the March 26, 2013 Agreement—the last arbitration agreement supposedly entered into by the parties—appears to be the operative contract. However, that Agreement is part of a larger admissions contract, which states that while the contract supersedes prior admissions contracts, any prior executed arbitration agreement remains binding on the parties. (*See* D.N. 42-2, PageID # 430, 440) That language suggests that either the 2010 or February 19, 2013 Agreement is the operative contract. Adding to the confusion is the fact that while the 2010 Agreement contains a

remain-in-effect clause, GGNSC presented Grimes with two additional arbitration agreements upon his subsequent admissions to Hillcreek. (*See* D.N. 16-1; D.N. 5-1, PageID # 31–38)

The Sixth Circuit's recent decision in *GGNSC Louisville St. Matthews LLC v. Badgett* is instructive on this issue. In *Badgett*, Joseph Badgett had signed an arbitration agreement at the time of his admission to GGNSC LivingCenter Mt. Holly. No. 17-5963, 2018 WL 1433812, at *1 (6th Cir. 2018). Like the Agreements at issue here, the agreement contained a remain-in-effect clause. *Id*. Upon a subsequent admission to LivingCenter St. Matthews, GGNSC presented Badgett with an admissions contract. *Id*. The admissions agreement stated the following:

> This Agreement supersedes any prior admission contracts regarding your admission to our LivingCenter. However, if you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement.

*Id*. at *3. Notwithstanding this language, GGNSC also presented Badgett with an arbitration agreement, which Badgett declined. *Id*. at *2.

The court first determined that based on the contractual language at issue, "[t]he St. Matthews admissions agreement supersedes the Mt. Holly admissions agreement, but incorporates both arbitration agreements and allows them both to remain binding." *Id*. at *3. Citing Kentucky law, the court found that "[t]he arbitration agreements are thus a part of the same transaction, and we find that the parties intended to incorporate both arbitration agreements into the contract as a whole."[1] *Id*.; *see also Cook United, Inc. v. Wais*, 512 S.W.2d 493,

---

[1] Contrary to Campagna's suggestion, *Badgett*'s ultimate holding is inapplicable to this matter. In *Badgett*, the Court found that Badgett's declination of the subsequently presented arbitration agreement constituted a novation of the prior arbitration agreement. 2018 WL 1433812 at *4–5. Here, Grimes never declined to arbitrate and thus the Court cannot find that he intended to

6

495 (Ky. 1974) ("A writing is interpreted as a whole and all writings that are part of the same transaction are interpreted together.").

Here, the admissions contracts allegedly entered into by the parties contain language identical to the St. Matthews admissions contract at issue in *Badgett*. (*See* D.N. 42-2, PageID # 430, 440 ("However, if you execute, or have executed, an Alternative Dispute Resolution Agreement . . . then that Agreement shall be, and remain, binding.")) Thus, the March 2013 admissions contract supersedes the prior admissions contracts between the parties, but incorporates all three arbitration agreements and allows them to remain binding. *See Badgett*, 2018 WL 1433812 at *3. Put differently, in light of *Badgett*, the Court need not determine which arbitration agreement is operative because the Agreements constitute a single "transaction" that should be interpreted as a whole. *See Cook United, Inc.*, 512 S.W.2d at 495. When interpreted as a whole, the Agreements clearly indicate the parties' intent to arbitrate their disputes.

Even if the Court were to construe the Agreements as separate transactions and find that the March 2013 Agreement signaled the parties' intent to terminate its previous Agreements—as Campagna argued in a prior pleading (*see* D.N. 37, PageID # 299–301)—the result would be the same. In entering into a final arbitration agreement in March 2013, the parties intended, at the very least, to arbitrate any claim that arose following Grimes's admission to Hillcreek on March 25, 2013. *See Badgett*, 2018 WL 1433812 at *4–5. Because the claims at issue arose in 2015, they fall within the scope of the March 2013 Agreement. (*See* D.N. 40, PageID # 353)

Campagna's principal argument to the contrary is unavailing. As mentioned above, during his final stay at Hillcreek, Grimes left the facility for treatment at the VA Hospital on several occasions. (*See* D.N. 46-1; D.N. 46-2) Campagna contends that Grimes's departures

---

extinguish his obligations under the Agreements. *See id*. at *4 ("[U]nless the transaction was intended to extinguish the old obligation . . . a novation is not effected.").

7

from Hillcreek constituted discharges, and thus each successive arrival back at Hillcreek constituted readmissions (i.e., subsequent "stays"). (D.N. 40, PageID # 355–56) Because the Coverage Disputes section of the March 26, 2013 Agreement states that the arbitration agreement applies to Grimes's "stay" at the facility (*see* D.N. 5-1, PageID # 36 ("This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's *stay* at the Facility." (emphasis added))), Campagna argues that the Agreement does not apply to Grimes's subsequent "stays" at Hillcreek and thus she is not bound to arbitrate any claim that arose during those subsequent stays. (D.N. 40, PageID # 355–56)

Campagna's argument is unavailing for two reasons, however. First, Campagna's emphasis on the Agreement's use of the word "stay" rather than "stays" in its Coverage Disputes section results from reading the parties' transaction in a vacuum. When read as a whole, the transaction between the parties evidences their clear intent to adopt a remain-in-effect clause. *See Speedway SuperAmerica, LLC v. Erwin*, 250 S.W.3d 339, 343 (Ky. Ct. App. 2008) (when construing a portion of a contract, "[t]he whole of the contract should be read"). Specifically, the March 26, 2013 Agreement contains a clause that states that the agreement to arbitrate shall apply to Grimes's subsequent stays at Hillcreek. (D.N. 5-1, PageID # 37) Thus, even if Grimes's departures from Hillcreek constituted discharges, the March 26, 2013 Agreement would cover Grimes's subsequent stays at the facility.

Second, the Court agrees with GGNSC that Grimes's departures from Hillcreek did not constitute discharges. GGNSC contends that:

> the facility held Grimes'[s] room while he was hospitalized, his personal possessions remained at the facility during those hospitalizations, the facility continued to chart on Grimes while he was hospitalized and conferred with the hospital regarding his condition, he was presented with no new admissions paperwork when he returned from the hospital, and each time Grimes came back to the facility after his hospitalizations he remained in the same room.

8

(D.N. 44, PageID # 449–450) The records pertaining to Grimes's departures from Hillcreek support GGNSC's contention. GGNSC held Grimes's room while he was hospitalized (D.N. 44-1; D.N. 44-5; D.N. 44-6), and its records indicate that Grimes was "sen[t] out" rather than discharged (*see* D.N. 44-2; D.N. 44-3). Indeed, the admissions contracts at issue identify brief hospitalization as a temporary absence, not a discharge. (D.N. 41-1, PageID # 395, 405) Moreover, because the signing of admissions documents is required for every admission of a patient at Hillcreek (*see* D.N. 40-7), the absence of admissions documents after March 2015 indicates that Grimes's subsequent arrivals back to Hillcreek did not constitute readmissions. Thus, even if the Court were to accept Campagna's argument that the March 26, 2013 Agreement only applies to a single "stay," the Agreement would cover Grimes's stay at Hillcreek from March 25, 2013 until his death in June 2015.

Having resolved the initial issues surrounding the Agreements, the Court will now turn to Campagna's primary arguments against compelling arbitration in this action.

*1. Unconscionability*

Campagna's primary argument is as follows. Prior to filing this action, Campagna received Grimes's medical records from Hillcreek. The records contain continuous pagination in the lower right-hand corner, running from 0762 to 0913. (D.N. 14-10; D.N. 14-11; D.N. 14-12; D.N. 14-13) The order of the pages, however, lacks a logical progression. A signature page for an arbitration agreement appears directly after the Table of Contents (D.N. 14-10, PageID # 91), and a page concerning financial responsibilities appears between two pages from an arbitration agreement (*id*, PageID # 93–95). And while complete arbitration agreements appear later in the records, because the pagination of the agreements does not start with "1," it is unclear whether they appeared within a larger agreement. (*See* D.N. 14-11; 14-12) Based on the illogical order

9

and lack of consistent pagination of the source documents within the record, Campagna argues, there is a question regarding the order in which Grimes received and signed the Agreements such that he may not have entered the Agreements knowingly. (*See* D.N. 14; D.N. 26; D.N. 37) In essence, Campagna attacks the Agreements as procedurally unconscionable. (*Id.*)

Under Kentucky law, "[p]rocedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citing *Schnuerle v. Insight Commn's Co., L.P.*, 376 S.W.3d 561, 576–77 (Ky. 2012)). It includes "the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term." *Id.* (citing *Schnuerle*, 376 S.W.3d at 576–77). Campagna cites no caselaw, and the Court is aware of none, in which a contract was found to be procedurally unconscionable because the pages of one's medical records—rather than the contract itself—were presented out of order. Nevertheless, several courts have rejected arguments pertaining to the manner in which an arbitration agreement was presented where the party attacking the contract offered insufficient evidence that the agreement was indeed presented out of order. *See, e.g.*, *Hartman v. Sabor Healthcare Grp.*, No. 3:14–cv–02167, 2015 WL 5569148, at *11 (M.D. Pa. Sept. 21, 2015) ("The plaintiffs have not produced any evidence that shows that the decedent was affirmatively misled by [the nursing home] or otherwise coerced into signing the arbitration agreement."); *Hampden Coal, LLC v. Varney*, No. 17-0088, 2018 WL 944159, at *11 (W. Va. Feb. 16, 2018) ("Upon our review of the parties' appendix record, we find no evidence to support any of [the defendant's] allegations concerning his personal circumstances or the manner in which the Agreement was presented for his signature.").

Here, Campagna fails to satisfy her heavy burden under Kentucky law for invalidating an authenticated arbitration agreement. She has produced no evidence that the manner in which the Agreements were maintained by GGNSC reflects the manner in which the Agreements were presented to Grimes upon his admissions to Hillcreek. In fact, the record indicates the opposite.

Former GGNSC Admissions Director Alisha Duvall, who presented Grimes with the March 26, 2013 Agreement, testified that "she would have presented the documents in numerical order, as they were contained in the admissions booklet at the facility." (D.N. 16-2, PageID # 157) And former Admissions Director Amy Morgan, who presented Grimes with the February 19, 2013 Agreement, testified that she always presented the admissions booklet, which includes the ADR Agreement, "in numerical page order." (D.N. 32-2, PageID # 243) Although Duvall and Morgan testified that they do not specifically remember Grimes's admissions (D.N. 16-2, PageID # 155; D.N. 32-2, PageID # 243), based on their testimony regarding the standard procedure at Hillcreek and given the lack of evidence to the contrary, the Court cannot find that the Agreements were presented to Grimes in a procedurally unconscionable manner. Furthermore, Duvall testified that "[b]ased on [her] standard procedure for presenting admissions documents, [she] would not have presented [the] admissions papers in the order [that] they are arranged in [the illogically ordered section of Grimes's records]." (D.N. 16-2, PageID # 157) Rather, Duvall states that the sections of Grimes's records that contain continuously paginated arbitration agreements "[are] organized in the order [she] would have presented it to Mr. Grimes as part of [her] standard procedure in presenting ADR agreements at the facility." (*Id.*) In other words, the GGNSC employee who presented the March 26, 2013 Agreement to Grimes has testified that the illogical order of Grimes's records is not indicative of the order in which he would have received his admissions forms. Indeed, the difficulty with Campagna's argument is

11

that Grimes's records actually contain continuously paginated versions of the 2013 Agreements. (*See* D.N. 14-11; 14-12) While a portion of Grimes's records are disorganized, the records contain complete versions of the February 19, 2013 and March 26, 2013 Agreements, both of which are signed by Grimes. (*See id*.) Contrary to Campagna's assertion, the fact that these documents do not start with "1" is irrelevant, as GGNSC employees testified that the arbitration agreements are presented as part of a larger admissions packet. (D.N. 16-2, PageID # 157; D.N. 32-2, PageID # 243)

Campagna's underlying argument concerning the pagination of the Agreements merges at times into a broader claim that the Agreements are procedurally or substantively unconscionable. Any broader argument regarding unconscionability likewise fails. As this Court and others have repeatedly discussed, the fact that the nursing-facility admissions process "entails a great deal of paperwork—similar to 'buying a house or a car, visiting the doctor, or starting a job'—does not render the Agreements procedurally unconscionable." *GGNSC Louisville St. Matthews v. Grevious*, No. 3:16-cv-829-DJH, 2017 WL 3623805, at *4 (W.D. Ky. Aug. 23, 2017) (quoting *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 815295, at *6 (W.D. Ky. Feb. 29, 2016)). Nor are the Agreements substantively unconscionable. The arbitration agreements here are "plainly stated . . . [do] not limit recovery; [are] reciprocal; and [Grimes] could have opted out of the agreement[s] within thirty days of signing [them]." *Mattingly*, 2016 WL 3448733 at *5. Additionally, the Agreements were not a precondition to admission to GGNSC. (*See* D.N. 5-1, PageID # 31)

In sum, Campagna has failed to demonstrate that the Agreements are unconscionable.[2]

---

[2] Although the circumstances of this case do not rise to the level of unconscionability, Campagna's arguments undoubtedly shed light on GGNSC's sloppiness in its patient admission and document retention practices.

*2. Capacity*

Campagna's claim that Grimes lacked capacity to execute the Agreements is firmly refuted by the record. Under Kentucky law, Grimes's capacity is presumed unless Campagna demonstrates, by clear and convincing evidence, that he did not have the capacity to contract. *See Lousman v. Brown*, 168 S.W.2d 579, 585 (Ky. 1943). Campagna has not met this burden. Hayes testified that when Grimes signed the 2010 Agreement, he fully understood the concept of arbitration—so much so that he in fact explained the concept to her. (D.N. 32-1, PageID # 234) And Duvall and Morgan testified that based on their standard practice, they would not have presented the 2013 Agreements to Grimes had he exhibited signs of incapacity. (D.N. 16-2, PageID # 156; D.N. 32-2, PageID # 224) In response, Campagna has not presented "clear and convincing evidence" that Grimes lacked capacity when entering into the ADR Agreements. Indeed, she has offered nothing more than speculation. (*See* D.N. 14) Thus there is no basis to find the Agreements invalid on the basis of incapacity.

Because Campagna has failed to present evidence upon which a reasonable jury could find that the validity of the Agreements is in dispute, the Court will compel arbitration on all but her wrongful-death claim. *See Great Earth Cos., Inc.*, 288 F.3d at 889.

### IV. Stay

Finally, "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout*, 228 F.3d at 714. GGNSC contends that "consistent with its past practice . . . the Court should stay the wrongful-death claim pending resolution of the [arbitrable] claims." (D.N. 42-1, PageID # 412–13 (citing *Crumpton v. Hurstbourne Healthcare, LLC*, No. 3:16-cv-478-DJH, 2017 WL 1091790, at *3 (W.D. Ky. Mar. 22, 2017))) However,

13

notwithstanding the Court's past practice, whether to stay a nonarbitrable claim is often a fact-specific inquiry. The Court therefore declines to decide at this time whether to stay Campagna's wrongful-death claim. Rather, the Court will refer the question to Magistrate Judge Colin H. Lindsay for a report and recommendation.

## V. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) GGNSC's motion to compel arbitration (D.N. 5) is **GRANTED** in part. The parties are **COMPELLED** to arbitrate pursuant to the terms of the Alternative Dispute Resolution Agreements the claims asserted by Campagna in her complaint, excluding Campagna's wrongful-death claim.

(2) The parties shall submit a joint status report every **ninety (90) days** from the date of entry of this Order until the conclusion of the arbitration. The parties shall promptly report on the resolution of the arbitration or of any settlement.

(3) This matter is hereby **REFERRED** to Magistrate Judge Colin H. Lindsay for a report and recommendation regarding whether a stay of Campagna's wrongful-death claim is warranted under the circumstances specific to this case.

June 19, 2018

**David J. Hale, Judge**
**United States District Court**